### George P. Howe v. Luther M. Stevens.

*Meeting-House.   Pew-Holders.   Trespass.   Damages.*

A meeting-house was built upon land with the permission of the owner, who subsequently conveyed the land to trustees in trust, to be occupied for a meeting-house common, or green, and for the continuation of a meeting-house thereon; and when it ceased to be occupied for that purpose, to revert to the grantor.   *Held*, that the failure to keep the house in such repair that it could be occupied for public worship, would not, of itself, terminate the right of a pew-holder to his pew, nor leave him without right to maintain an action for injury done thereto by a stranger; but would only make his right thereto less valuable, and therefore lessen the amount he could recover.

A pew-holder cannot maintain trespass for the mere breaking and entry of the meeting-house in which his pew is situate; but he may for the destruction of his pew, and this, although he sue for the entry with it; for the destruction of the pew is the gist of the action.

Although others may have so far obtained possession of a meeting-house as to oust the society, yet a pew-holder may maintain trespass for the first invasion of his individual right to his pew after such ouster.

A pew-holder's right is only a right to occupy his pew during public worship; and when the meeting-house is in such ruinous condition that it cannot be and is not occupied for public worship, he can recover only nominal damages for injury to his pew.

Trespass *qua. clau.* for breaking and entering the brick meeting-house in Jericho, and taking out and destroying the plaintiff's pews therein.   Trial by jury, April term, 1873, Pierpoint, Ch. J., presiding.

It appeared that at the time of the committing of the acts complained of, the plaintiff owned one pew in said house in his own right, and one undivided fifth part of five other pews therein in the right of his wife, unless the facts hereinafter stated show that the plaintiff had a different interest in said pews. In 1824, George Howe, and other persons, formed and organized an association called the "Brick Meeting-House Society of Jericho," for the purpose of building a meeting-house, and supporting the Gospel, under the act for the support of the Gospel, passed October 26, 1798; and said society in the years of 1824 and 1825, built said house upon the land of said Howe, in Jericho. On the 3d of April, 1834, said Howe conveyed to Oliver Lowry, Luther Prouty, and William A. Prentiss, and to the survivor of them, their heirs and assigns, in joint tenancy, "about one acre of land now enclosed as a meeting-house green, on which the brick meeting-house, or church, now stands at Jericho Corners, so called, in Jericho; meaning to include the whole of the ground now occupied by said brick meeting-house, or church, with the sheds attached, and also the whole of the ground enclosed for a common, or green." *Habendum* "to the use above named, and for the owners and proprietors of the said brick meeting-house, or church, upon the special trust and confidence, and for no other purpose whatever, that is to say, that the said Oliver Lowry, Luther Prouty, and William A. Prentiss, their heirs and assigns, and the survivor of them and his heirs and assigns, shall and will, from henceforth, permit the owners, proprietors, and their successors, of said brick meeting-house, or church, to occupy the said land herein before granted, for the purpose of continuing a brick meeting-house thereon, and for a common, or green, subject to the following reservations and conditions, viz: that if the owners and proprietors of said brick meeting-house or church, shall neglect or omit to occupy the said land herein before granted, for the purpose aforesaid, and by continuing a meeting-house, or church, on said land, then said granted land shall revert to me and my heirs.'"

Said house was occupied as a house of public worship, till 1865, when it became ruinous and in a dilapidated condition, and meetings ceased, and have not been held therein since that time;

and it still remains unfit for a place of public worship. The said Howe died in 1857, and by his last will and testament, duly proved and established, devised all his property to his widow, Mary P. Howe, who survived him.

It appeared that the said Mary conveyed said meeting-house, and the same property conveyed by her husband's deed aforesaid, to C. M. Spaulding, James Hutchinson, and Hiram Booth, by deed bearing date March 14th, 1868; that said Spaulding, Hutchinson, and Booth, conveyed eleven fourteenths of said house and property to L. B. Howe and ten other persons, by deed bearing date April 23d, 1868; that the grantors and grantees in the last-mentioned deed, conveyed said house, premises, and property, by deed bearing date March 5th, 1869, to school-district No. 3 in Jericho; that said Lowry and Prouty deceased before 1865, and that the said Prentiss conveyed said house and premises to said district, on the 4th of May, 1869.

At the time said Spaulding, Hutchinson, and Booth took their deed from the said Mary, they supposed said house and premises had reverted to her, and that she was the owner thereof in fee.

The grantors and grantees in said deed from Spaulding, Hutchinson, and Booth, held possession of said house, property, and premises, under their claim of title, and their respective deeds, in good faith; and said district took possession of said house, pews, and premises, at the time it purchased and took said deed of March 5th, 1869, and continued in possession of the same under its deeds and claim of title, and in good faith, claiming to own said house, pews, and premises, down to the present time. It appeared that said district purchased said house, pews, and premises, pursuant to a legal vote for that purpose; and that, after the district had obtained its deed of March 5th, 1869, the defendant and H. M. Field and J. H. Hutchinson, were, at a school meeting legally warned and held, duly appointed a building and repairing committee, and directed to remodel and repair said house for a district school-house; and that the defendant, as one of such committee, proceeded to remodel and repair said house, as directed by said vote, and in so doing did tear up, destroy, and remove said pews, which were the acts complained of.

It was conceded for the purposes of trial, that five pews were owned by Truman Galusha, at his death; that said Galusha died intestate, previous to 1864, leaving T. C. Galusha, R. L. Galusha, R. M. Galusha, the wife of said L. B. Howe, and the wife of the plaintiff, his children, surviving him, but left no widow; that David Fish was duly appointed administrator of his estate, but that the administrator never had any license from the probate court to sell said pews, or any of the meeting-house property, and never did convey them to any one; that the said children and heirs of said Galusha, verbally agreed that the plaintiff might have their interest in said pews, house, and premises, for $30, and that the plaintiff should pay to the administrator of said estate that sum; that pursuant to that agreement the plaintiff accounted to said Galusha's estate for said $30, but that the children of Galusha never conveyed said pew property, nor their interest in said house and premises, to the plaintiff, or to his wife, by deed. The said L. B. Howe, T. C. Galusha, R. L. Galusha, and R. M. Galusha, conveyed their interest in said house, premises, and pews, by joining in said deed of March 5th, 1869, to said school district, but the district, at the time of the purchase and the taking of said deed, did not know that the plaintiff had verbally purchased or agreed to purchase, any interest in said house, pews, and premises, but the said district purchased the same in good faith.

It appeared that at the time the defendant and the other two committee were doing the acts complained of, the plaintiff and W. H. H. Wood, and eight other persons, brought their bill in chancery against said district and the defendant and the other two committee, to enjoin said district, its officers and said committee, from proceeding further to repair and remodel said house. The answer to said bill was filed, and testimony taken, and the case finally heard in the supreme court, and reported in 43 Vt. 282; and that case was made a part of these exceptions.

It was conceded for the purpose of this trial, that the plaintiff was a member of the said society. The defendant offered evidence tending to show, that said house, pews, property, and prem-

34

ises, had reverted to the said Mary P. Howe, and that the reversionary right was conveyed to said district by said deeds, in chain of title from her; but the court decided that said evidence was immaterial and not admissible, on the ground that the decision in said chancery suit on the question of the reversion of the property, was conclusive between the parties in this case; to which the defendant excepted. Upon the foregoing facts and concessions, the court decided that the plaintiff was entitled to recover nominal damages only, and directed a verdict accordingly; to which decision both parties excepted.

*R. H. Start*, for the plaintiff.

When the district took its deed from Prentiss, it became the assignee of the trust estate and legal title as trustees, for the use and benefit of the brick meeting-house society, of which the plaintiff was a member, just as said Prentiss held it. *Howe et als.* v. *School District*, 43 Vt. 282. When the district became such trustee, the wrongful possession taken under its deed of March 5th, 1869, became merged in the rightful and legal possession under the Prentiss deed, and the district must then be considered as holding, not adversely to said society and pew-owners, but for their use and benefit. It cannot hold one possession for and one against the society and pew-owners at the same time. After the district acquired and took the legal estate, it must be treated as holding as trustee under the said Howe deed, irrespective of its wrongful possession and acts under the deed of March 5th.

The district, at the time of the committing of the alleged trespasses, being in possession of said land and church, and holding the legal title thereto in trust for the use and benefit of said society and pew-owners, and the plaintiff being the owner of said pews in his own right and individual capacity, and entitled to occupy them whenever said church should be used for public worship, he may sustain this action against the trustee or its servants, for the removal and destruction of said pews. *Kellogg* v. *Dickinson*, 18 Vt. 266; *O'Hear* v. *DeGoesbriand et al.* 33 Vt. 593; *Shaw* v. *Beverage*, 3 Hill, 26.

The court properly rejected the evidence offered by defendant

tending to show a reversion of the land and buildings, as that question is settled by this court in *Howe* v. *School District, supra.*

The plaintiff is entitled to full damages.

*L. F. Wilbur* and *Wales & Taft,* for the defendant.

The evidence offered by the defendant and rejected by the court, was admissible, to show the reversion of the house and premises to Mary P. Howe. It is insisted that the decision of the case of *George P. Howe et als.* v. *The School District et als.,* is not conclusive on the question of reversion in this case. *Viles et al.* v. *Moulton,* 13 Vt. 516. The defendants pleaded that the property had reverted to Mary P. Howe, and the plaintiff, if he relied upon the decree as an estoppel, should have replied specially. *Brinsmaid, admr.* v. *Mayo,* 9 Vt. 31 ; *Isaacs* v. *Clark,* 12 Vt. 692.

As tending to show that the plaintiff's interest in the pew property had ceased, for the reason that the house was not occupied, and had become ruinous and wholly unfit for the purpose for which it was built, and abandoned by the plaintiff, see *Kellogg* v. *Dickinson,* 18 Vt. 266 ; *Perrin* v. *Granger,* 33 Vt. 101, 105 ; *Daniel* v. *Wood,* 1 Pick. 104.

It is well settled that a pew-owner has no property in the house itself, nor in the material of which the pew is composed. *Kellogg* v. *Dickinson, supra ;* 1 Pick. 91.

The house having ceased to be occupied as a place of worship, and become ruinous and unfit for that purpose, and the district being in possession of the property in good faith, under their claim of title, and the plaintiff not having any possession of his pew, the plaintiff has no interest left for which he can sustain his action. *Ripley* v. *Yale,* 16 Vt. 257 ; *Kellogg* v. *Dickinson, supra.*

This would be so, even if the premises had not reverted by reason of the brick meeting-house society intending to build a new house on the same ground, or other use of the premises consistent with the deed of trust that would not render the old pews of value or serviceable for purposes consistent with the trust.

The title to the property at the time of the committing of the acts complained of, was in Prentiss, the survivor of the trustees ; and at the time of the commencement of the suit, and down to the

present time, is in the school district. Neither the society nor the plaintiff has occupied or been in possession of any part of the property since 1865, for any purpose; but ever since 1865, the school district, and those in its chain of title, have been in exclusive possession of the entire property, claiming title to it in good faith, adverse to the rights of the pew-holders. *Methodist Society of Georgetown* v. *Bennett et als.* 39 Conn. 293. It is insisted that the action of trespass *quare clausum fregit*, cannot be sustained where the plaintiff had neither title nor possession at the time of the committing of the acts complained of, and when it has ever since been in the adverse possession of the defendant, or the party under whom he acts. *Ripley* v. *Yale*, 16 Vt. 257; *Cong. Society in Bakersfield* v. *Baker*, 15 Vt. 129; 5 B. & Ald. 256, 600; *Exrs. of Stevens* v. *Hollister*, 18 Vt. 294; *Wheeler* v. *Hotchkiss*, 10 Conn. 225; *Tobey* v. *Reed*, 9 Conn. 216; *Payne* v. *Clark*, 20 Conn. 30.

If we are right in the position that the plaintiff cannot sustain trespass for breaking and entering the house, the action fails; for the breaking and entering the house is the gist of the action, and the destruction of the pew was only matter of aggravation. *Grout* v. *Knapp*, 40 Vt. 163; *Carpenter* v. *Barber*, 44 Vt. 441; 44 Mass. 239.

If the action can be sustained at all, the court was right in limiting the plaintiff's recovery to nominal damages. *Exrs. of Stevens* v. *Hollister*, *supra*.

If the plaintiff had any interest in the five pews, it was in the right of his wife. The plaintiff did not acquire any title to those pews by agreeing with the heirs of Truman Galusha to pay, and paying, $30 to his estate, and receiving no written conveyance of the pew property. The heirs had no authority to sell the pews, and the administrator had no license to sell them. Pew property is real estate, *Hodges and wife* v. *Green*, 28 Vt. 358, and can only be conveyed by deed; and the plaintiff acquired no interest or title to the pews by the verbal agreement. *Barnard* v. *Whipple*, 29 Vt. 401; *Bramfield* v. *Carson*, 5 Am. Rep. 185. And the wife should have been joined in this action. In the action of trespass *quare clausum fregit*, for the destruction of the

wife's real estate, the wife must join, as the damage for the destruction of the property would survive to her. *Thatcher and wife* v. *Phinney*, 7 Allen, 150; *Gillis* v. *M'Kay*, 4 Dev. 172; 4 U. S. Dig. 131, §§ 291–294; 9 U. S. Dig. 269, § 93; 1 Chit. Pl. 75.

Three of the heirs of Truman Galusha conveyed their title to the school district by deed. The district had no knowledge of any sale or attempt to sell the pew property to the plaintiff, but purchased all the interest that those heirs ever had therein, in good faith, not knowing that the plaintiff claimed any interest in the pews, and supposed that the district was acquiring a good title ; therefore the district did acquire all the interest that R. M., R. L., and T. C. Galusha ever had in the pew property that belonged to their father's estate. The conveyance constitued the plaintiff's wife and the school district tenants in common in the five pews. *Otis* v. *Thompson*, Hill & Denio, 131. It is insisted that one tenant in common cannot maintain trespass *quare clausum fregit.* against the other tenant in common, when there has been no division of the estate, or agreement between the owners to occupy separate portions of it. *Wait* v. *Richardson et al.* 33 Vt. 190.

The opinion of the court was delivered by

WHEELER, J. This meeting-house and land appear to have been subject to three kinds of ownership. At the bottom of all was the right of George Howe to the *reversion* of the *land*, if his deed of it conveyed an *estate upon condition ;* or to the *remainder* of the estate in it, if his deed conveyed an estate with a *conditional limitation.* Then there was the right of the brick meeting-house society to the *house*, and to the *land* so long as the condition in that deed should be kept. And besides these, there were the rights of the pew-holders, of whom the plaintiff was one, to the pews. The source and extent of the interest of the plaintiff as one of the pew-holders, do not appear, further than that it is stated that he owned one pew in his own right, and one undivided fifth part of five others in the right of his wife, unless other facts stated show a different interest. The other facts stated do not

refer to his interest as a pew-holder in the one pew held in his own right; therefore he is taken to be clearly the owner of that pew. The defendant appears to have acted wholly for, and in the right of, the school district, in what he did about tearing up and removing the pews; and not at all for, or in the right of, the meeting-house society; and as to this one pew of-the plaintiff, the school district appears to have had no right whatever, except that acquired of Mary P. Howe, devisee of the estate of George Howe. George Howe appears to have formerly had the whole estate whereon the meeting-house was built, and the meeting-house society to have built the house upon it, with his permission. When this was done, probably, he owned the land and the·society the house. *Barnes* v. *Barnes*, 6 Vt. 388; 1 Wash. Real Prop. 4. The exceptions state that after this, he conveyed the *house* and land by his deed; but the deed itself is made a part of the exceptions, and that shows that he did not in terms assume to convey anything but the land. The land is described in the deed as being that on which the house then stood; and the *habendum* is to the grantees, to hold upon special' trust, to permit the owners of the house to occupy the land for the purpose of continuing a meeting-house on it. This looks as if he did not claim to own, nor assume to convey, any right to the house, nor anything more than the land itself, apart from the structures upon it. If this was so, then, although there may have been such a failure to fulfill the condition in the deed and proceedings thereupon, as to entitle Mary P. Howe to the *land*, she would not thereby acquire any title to the *house;* and the right of the society to that, and of the plaintiff to his pew, would remain undisturbed by the failure. But if this was not so, the defendant, acting for, and in behalf of, the school district, was privy to the right, and to all things affecting the title of the district, and stood affected by the decree in the suit of the plaintiff and others against the district and the defendant and others, the same as the district was. That decree settled conclusively, that, at the time in question, the school district had no right to disturb the society in the continuance and occupancy of the house; and, consequently, that the defendant

had no right under the district, to disturb the plaintiff's occupancy of his pew. Inasmuch as the plaintiff, apart from his connection as a member with the society, was merely a pew-owner, subject to the rights of the society, as between them, probably, the society had the right to tear up and remove his pew, for the purpose, when necessary, of repairing or remodelling that, or building another, house for like public worship ; but the defendant was, in law, a stranger to the society, and could not stand at all upon that right. The failure to so keep the house in repair that it could be occupied for the purposes of public worship, for which it was built, would not, of itself, terminate the plaintiff's right to his pew, nor leave him without right to maintain an action for an injury done to his right to it by a stranger ; but would only make his right to it less valuable, and in that way lessen the amount he could recover. Upon the case as stated in the exceptions, the plaintiff had title to this pew, and the defendant had no legal justification for tearing up, destroying, or removing it.

This action is stated to have been brought for breaking and entering the house and taking out and destroying the pews. The mere entry into the house would not be any invasion of the individual rights of the plaintiff as a pew-holder ; and he could not recover in this action for such entry ; and it is insisted in argument that, therefore, he cannot be entitled to recover for anything done to the pew after the entry. But the pew itself, as it belonged to the plaintiff, was his real estate ; and although he did not so own the materials of which it was made, nor have such exclusive right to it, that he could maintain the action of trespass for every interference with it, still, he could maintain that form of action for its destruction. The tearing up and removal of the pew were equivalent to a destruction of it, and were a material and substantial part of the injury sued for, that the plaintiff could maintain the action for, without suing for the entry with it, and which he could recover for when sued for with the entry, without recovering for the entry. If the injury to the pew was a mere matter of aggravation, it would be different ; but it is more than that ; it is of the gist of the action. His right to the exclusive possession of

his pew, was so distinct from the ownership and possession of the house, that he could maintain trespass even against the society itself, or any one standing upon its right, for an exclusion of himself from his pew, unless done in the exercise of the right to repair or rebuild belonging to the society to which his ownership was subject.   *O'Hear* v. *De Goesbriand et al.* 33 Vt. 593.   It is also insisted that the plaintiff did not so have possession of his pew that he could maintain this action.   But, as has already been seen, the possession of the plaintiff's pew by himself, was separate from the possession of the house by the society, or by strangers; and although the school-district and the defendant may have so got and kept possession of the house that the society could not maintain trespass for any injury to that, without first recovering possession by an action of ejectment, or otherwise, still, the tearing up of the plaintiff's pew appears to have been the first invasion of the plaintiff's individual right, and the first injury to his possession; and for that invasion and that injury, he is entitled to maintain this action.   3 Bl. Com. 210 ; 1 Chit. Pl. 177.   Upon these considerations, the evidence offered by the defendant and excluded by the court, was inadmissible, for the reasons given when it was excluded, and because, if admitted, it would not have varied the rights of the parties.   The case shows that before the acts complained of in this suit were committed, the meeting-house became ruinous and dilapidated ; meetings in it ceased ; and at the time of and after these acts, it remained unfit and unoccupied for public worship.   The plaintiff's right as a pew-holder was only a right to occupy his pew or pews during public worship, and these facts showed that there was no such worship during the time covered by his declaration that he could occupy them to attend upon, and that during that time, whether entitled to one pew only or to some right in the other five as well, he was not disturbed in the enjoyment of anything that could have been of any actual value to him, and that therefore he could not recover any actual damage. The exceptions do not show whether the court held the plaintiff entitled to recover nominal damages for one pew only, or for all. As the case stood, the plaintiff was entitled to recover nominal

damages for the invasion of, and technical injury to, his rights, and no more than that, whether the rights were to one pew or several; and the verdict was right, whether it was for all the pews or only one. Hence there is no occasion now to examine into the plaintiff's right to the five pews.

Judgment affirmed.