## JONES *v.* TOWNE & a.

The right of a pew-holder to a pew in a meeting-house owned by a religious society is subordinate to the right of the society to repair or remodel the house.

A religious society may alter, remove, or destroy a pew in its meeting-house upon paying or tendering to the owner full compensation, when it becomes necessary for the purpose of making needed alterations or repairs in their church edifice.

A person wrongfully occupying a pew may be removed from it by a police officer, or by the owner of the pew, or any one acting at his request.

TRESPASS, for an assault in forcibly removing the plaintiff from a pew in a meeting-house.

The meeting-house was erected by the town of Rindge about the year 1791. In 1839 the town voted to permit the First Congregational church and society in Rindge to make alterations in the interior of the building so as to make an upper and a lower room; and further voted, that in consideration that the society would make such alterations, the society should have the exclusive possession of and the right to control the upper room as an audience-room, to be used for the purposes of public worship, and the town would use the lower room for a town hall. The society accepted the proposition, made the alterations in the building, constructed pews in the upper room, and afterwards from time to time sold the pews, giving to the purchasers a conveyance in writing, and have ever since occupied the said upper room for a house of public worship.

Among these pews was a wall pew, No. 38, sold about the year 1849 to H., who occupied it, and in April, 1858, sold it to the plaintiff, who occupied it until 1871, but never was a member of the society, and did not, except by voluntary contribution, assist in defraying any of its expenses.

In 1871 the society, deeming it necessary to make some alterations in and additions to their audience-room, voted to buy of the pew-owners, at a valuation to be fixed by three disinterested persons chosen by the society to act as appraisers for that purpose, all the pews not previously purchased at an agreed price. The appraisers appraised pew No. 38 at a certain sum, which was tendered to the plaintiff, but he refused to accept it. The main alterations in the audience-room were, the changing of the floor from an inclined plane to a level, the erection of a new pulpit at the opposite end of the room, the changing of the pews so as to make them face the new pulpit, removing the wall pews on the south side to the north side, and those on the north side to the south side, the removal of the organ to a recess constructed in the rear of the pulpit, and the erection of some new pews. Some time in the fall of 1873 the plaintiff on several occasions took possession of pew No. 25, which the society had previously let to Joshua Fletcher, and which the evidence showed stood partly upon the same part of the ground floor which had previously been occupied by pew No. 38, the floor, however, having been lowered a few inches to bring it to a level. The defendants' evidence tended to show a difference of eight inches between the position of the front of pew No. 25 and the back of pew No. 38 as it formerly stood; and the plaintiff's evidence tended to show that the pew occupied the same location. On the thirty-first day of January and the seventh day of February, 1875, the plaintiff took possession of pew No. 25. Fletcher requested him to vacate, and he refused. Fletcher then requested the defendant Towne, who was a police officer, to remove him, and Towne called upon the defendant Sargent to assist him, and the two, using no more force than was necessary, removed the plaintiff from the pew into the aisle, whereupon he left the house. Upon this evidence the court ruled,—

1. That the plaintiff and those under whom he claimed owned their rights in pew No. 38 subordinate to the superior right of the society, to the extent that

2. The society might lawfully repair and alter, or destroy, or remove the pew, for the purpose of altering and remodelling their audience-room, upon paying or tendering to the plaintiff full compensation.

3. If this has been done, the society might grant to Fletcher the exclusive right to occupy No. 25, whether or not No. 25 was located wholly or in part on the site of No. 38.

4. If, under these circumstances, the plaintiff should intrude upon Fletcher's occupation of No. 25, and refuse to surrender it and insist upon occupying it, this would be such a disturbance and breach of the peace of the sanctuary as would justify the interference of the police.

5. If Towne, being a police officer, used no more force than was necessary for the plaintiff's removal, he is not guilty.

6. If Sargent, acting under instructions from Towne, used no more force than was necessary for the plaintiff's removal, he is not guilty.

To these rulings the plaintiff excepted. Verdict for the defendants.

*Lane*, for the plaintiff.

*Faulkner*, for the defendants.

CLARK, J. In *Fisher* v. *Glover*, 4 N. H. 180, the court, in discussing the question of the rights of pew-holders, say,—" It is usual to grant to individuals the exclusive use of pews, and these grants give to those individuals certain rights which are to be protected. The rights thus acquired are, however, limited, and are, in our opinion, subject to the right of the society to have the meeting-house in such place as will best accommodate the whole. A reservation of this right is implied in the grant of a pew in a house of public worship. The convenience of individuals must in such cases be subject to the general convenience of the whole; and whoever purchases a pew, purchases it subject to this right of the society." The language of the court in this case, and the statement of the relative rights of the society and the pew-holders, apply equally to the right of the society to alter, or remodel, or to remove the church edifice, which was the question then under consideration. This declaration, that the rights of pew-holders, from the nature of the property, are subject to the superior rights of the society for certain purposes, was made many years before the adoption of any statute in this state relating to the sale, alteration, or repairs of houses of public worship.

In *Howe* v. *Stevens*, 47 Vt. 262, it is said,—" A pew-holder's right is only a right to occupy his pew during public worship ; and when the meeting-house is in such a ruinous condition that it cannot be and is not occupied for public worship, he can recover only nominal damages for injury to his pew." " Pew-holders, in the ordinary cases of meeting-houses or churches built by incorporations under the statute, have only a right of occupancy to their seats, subject to the superior right of the society owning the pew." *Perrin* v. *Granger*, 33 Vt. 101. " Pew-holders have merely a qualified and usufructuary right in their pews, subject to the right of the religious society to remodel them, and to alter the internal structure of the building, or enlarge or remove it, or sell the edifice and rebuild elsewhere." *Sohier* v. *Trinity Church*, 109 Mass. 1 ;—see, also, *Gay* v. *Baker*, 17 Mass. 435 ; *Daniel* v. *Wood*, 1 Pick. 102 ; *Fassett* v. *First Parish in Boylston*, 19 Pick. 361 ; 3 Kent 533 ; *Kimball* v. *Second Parish in Rowley*, 24 Pick. 347. Such is the common law of New Hampshire in relation to the pew-holder's right. It is a qualified ownership, subject to the superior title included in the ownership of the house. The pew-holder cannot remove the pew, nor use it for any purpose except occupancy when the house is opened for use, and pew-tenancy is as accurate a designation of his interest as pew-ownership.

It is claimed, however, by the plaintiff, that the common law rights of the society have been abolished by the statutes now in force in relation to such property. But none of the provisions of chapter 140 of the General Statutes, relating to the sale, repairs, and modification

of meeting-houses, appear to be applicable to this case. Besides, the statute does not confer any new rights of property upon the pew-holder. It merely recognizes the superior rights of the society as they existed at our common law, and provides a mode of compensation to the pew-owner for the loss or destruction of his pew, in certain cases.

In *Kimball* v. *Second Parish in Rowley*, 24 Pick. 347, 350, the court say, in speaking of the Massachusetts statute of 1817,—" Parishes, having before the right to remove pews for certain purposes, were not deprived of it by the passage of the statute. They may therefore still rely upon their original right, even if they also have the statute right. They were not bound to avail themselves of the new provisions, but might well justify themselves in the proper exercise of their former rights."

The society had the right to remove the pew, and there remained to the plaintiff only the right of compensation for its loss. No question is made but what the amount tendered by the society to the plaintiff was sufficient compensation for the pew, and the rulings of the court upon this branch of the case were correct.

By persisting in the occupation of pew No. 25, and excluding Fletcher, the rightful occupant, the plaintiff became a trespasser, and upon his refusal to remove upon request, Fletcher, or any one acting at his request, had the right to remove him, using no more force than was necessary ; and we think the ruling of the court upon this point was correct, that the exclusion of Fletcher from the occupation of his pew by the plaintiff, and his refusal to surrender it when requested, was such a disturbance and breach of the peace of the sanctuary as would justify the interference of the police.

*Exceptions overruled.*

FOSTER, J., did not sit.