COLBY v. NORTHFIELD AND TILTON CONGREGATIONAL SOCIETY.

When, with the assent of a religious society owning a meeting-house, repairs and alterations changing the location of the pews are made by the pew-holders, an equitable assignment of the new pews among the pew-holders, by a committee of the pew-holders acting with their implied assent and in pursuance of a vote of the society, is valid.

CASE, for selling the plaintiff's pews in the defendants' meeting-house, and depriving him of the use of them. Facts found by the court. April 30, 1881, the plaintiff was the owner of two pews, numbered 7 and 21, by deeds from the defendant society, in which the entire control of the house was reserved to the society. On that day, at a meeting of the pew-holders, called and held under Gen. St., c. 154, ss. 12, 13, it was voted, by three fourths of those present and voting, that "the pew-holders repair said house of public worship, modify the interior thereof, remove the pews therein and provide new ones, and otherwise change the interior accommodations of said house, as the agent or agents chosen by said pew-holders shall deem advisable," and to raise for the purpose a sum of money "not exceeding $1,500, by assessment of the pew-holders;" and agents were duly chosen. On the same day the society, of which the plaintiff was not a member, at a meeting duly called, resolved "that the Northfield and Tilton Congregational Society ratify and confirm the foregoing votes of the pew-holders, and accept and agree to the agents appointed by said pew-holders, and hereby waive all rights, if any we possess, to control or interfere with the action this day taken by said pew-holders." Fifteen hundred dollars was raised by assessment upon the pews, according to their value as determined by the selectmen, of which the plaintiff paid the part assessed upon his pews. Among the modifications of the interior was some change in the arrangement and location of the pews.

After the repairs were completed, the society voted, November 7, 1881, "that the president and secretary of the society be authorized to give new deeds of the new pews, and that the secretary record the deeds of the pews in the record-book of the society," and December 5, 1881, "that the agents for making the repairs assign the pews to the owners." December 6, 1881, the agents made the assignment;—to the plaintiff they assigned pew numbered 33, about four fifteenths of which are upon the *situs* of the plaintiff's old pew No. 21, and seven fifteenths upon the *situs* of the old pew immediately in front of old pew No. 21, and four fifteenths upon that of the old aisle. A deed of this pew (No. 33) was tendered to the plaintiff, who refused to accept it, claiming that he was by law entitled to pew numbered 31, of which about seven fifteenths are located upon the *situs* of his old pew No. 21, four

fifteenths.upon the *situs* of the old pew next in the rear of 21, and four fifteenths upon the old aisle.   The plaintiff has been at liberty to occupy pew No. 33, but has declined to do so.   Pews 31 and 33 are in all respects equally eligible and of equal value.

The facts regarding old pew 7 are substantially the same. Judgment is to be rendered for the plaintiff for one dollar damages, or for the defendant, as the court may order.

*Barnard & Barnard*, for the plaintiff.

*Pike & Parsons*, for the defendants.

STANLEY, J.   The plaintiff does not controvert the general doctrine announced in *Jones* v. *Towne*, 58 N. H. 464, but he claims that the repairs in this case were made by the pew-owners, according to the provisions of Gen. Laws, *c.* 154, *ss.* 12, 13, and that the society had no right to locate or assign his pews.   The society owned the building and sold the pews, "reserving to themselves and their successors the entire control and management of said house."   This reservation did not, however, enlarge or change the rights of the society at common law; for, under that, the pewholders have merely a qualified and usufructuary right in their pews, subject to the right of the society to remodel them and to alter the internal structure of the building, or enlarge or remove it, or sell the edifice and rebuild elsewhere.   The pew-holder's right is a modified ownership, subject to the superior title included in the ownership of the house.   *Jones* v. *Towne, supra.*   Nor was the common-law right of the plaintiff changed by the statute.   The statute prescribes the way in which the paramount right of the society may be enjoyed and enforced.   It does not affect the common-law right of the pew-owner.

The plaintiff owned his pews subject to the right of the society to the control and management of the house, and to the right of three fourths of the pew-owners to make such repairs and modifications as they saw fit.   April 30, 1880, a meeting of the pewowners was held, agreeably to the provisions of the statute, at which they, by a three-fourths vote of those present and voting, voted to repair their house of public worship, modify the interior thereof, remove the pews therein, and provide new ones; and otherwise change the interior accommodations of the house as the agent or agents chosen by them should deem advisable, and to raise for the purpose a sum not exceeding $1,500 by assessment of the pew-holders.   The improvements cost $6,000.   Subsequently, on the same day, the society voted to ratify and confirm the votes of the pew-holders, and accept and agree to the agents appointed by the pew-holders, and waived all right, if any they possessed, to control or interfere with the action taken by the pew-holders.   By this vote the society confirmed the action of the pew-holders, and

the agents appointed by them became the agents of the society. Whether the pew-holders could make the new assignment is a question that does not arise. Their agents made the assignment, as they were authorized to do by a vote of the society and the assent of the pew-holders implied from their silence and inaction; and the assignment thus authorized is valid. If it were unauthorized and invalid, there would be a question how the plaintiff could own any particular pew in severalty without a partition of property commingled by the reconstruction. No injustice appears in the partition that has been made, and the plaintiff has no equitable or legal cause of complaint.

*Judgment for the defendants.*

CARPENTER, J., did not sit: the others concurred.