Hillsborough, {
  June, 1895. {

FIRST PRESBYTERIAN SOCIETY OF ANTRIM *&amp; a. v.* BASS *&amp; a.*

A church and society that have had peaceable, continuous, and uninterrupted possession of church property for more than forty years under claim of ownership may dispose of the same by vote of three fourths of their members.

A pew-holder's right of occupancy is subject to the right of the meeting-house proprietors to sell the church edifice and rebuild elsewhere.

BILL IN EQUITY, alleging that for more than fifty years the First Presbyterian Society of Antrim have owned and used as a place of public worship, under the forms and usages of the Presbyterian church, a meeting-house, vestry, and appurtenances, situate in the central part of Antrim ; that at a meeting holden August 5, 1893, it was voted by three fourths of all the members of the society to sell the property, the proceeds to be appropriated to the payment of indebtedness and to the use of the society at its new place of worship; and that the defendants have taken possession of the property under a claim of ownership. The prayer of the bill is that the rights of the parties be determined, that the defendants be enjoined from interfering with the sale under the vote, or that an order issue for a sale of the property and a division of the proceeds among the parties entitled to the same. The First Presbyterian Church of Antrim were joined as plaintiffs by amendment. The defendants deny that the plaintiffs are the owners of the property in controversy or have any interest therein, and aver that the property is owned by the Central Society in Antrim, from which the plaintiffs have seceded. Facts found by the court are stated in the opinion.

*David Cross* and *Oliver E. Branch,* for the plaintiffs.

*Charles H. Burns,* for the defendants.

CLARK, J. The question presented is that of title to certain land at Antrim Center, a meeting-house and vestry erected thereon, and the appurtenances thereto. The First Presbyterian Society of Antrim allege that they have owned and used the property in controversy for more than fifty years. The defendants are in possession of the property, and contend that it is owned by the Central Society in Antrim, from which the plaintiffs are alleged to have seceded. The First Presbyterian Society

having erected a new house of worship, three fourths of the members voted to sell the old church property at Antrim Center and appropriate the proceeds to the payment of debts and to the use of the society at the new church. "Any building used as a place of public worship may be sold or disposed of, and the proceeds thereof be appropriated to like purposes, whenever three fourths of all the proprietors so vote at a meeting called and notified as provided in section three of this chapter." P. S., *c.* 153, *s.* 8. Under this statute the plaintiffs have a right to dispose of the property in controversy, and appropriate the proceeds to the purposes specified, if they are the proprietors thereof, and not otherwise.

The First Presbyterian Church of Antrim was organized in 1788, by a committee of the Presbytery of Londonderry, and has had a continuous and uninterrupted existence to the present time. It has been governed by committees with specified powers, called the session, composed of the pastor and elders or deacons elected for life, according to the laws and usages of the Presbyterian church. , The session controls the affairs of the church, and the pastor and elders, for business purposes, are the church. Above the session is the presbytery, which has full authority over the church when appealed to, and directs the location of church buildings. Otherwise the church is practically independent.

In February, 1825, seventy persons, most of them members of the church, subscribed $3,275 for the purchase of land at Antrim Center and the erection thereon of a new meeting-house. This amount was insufficient, and about January 1, 1826, forty-four of the subscribers joined with fifteen others, most of them members and all of them adherents of the Presbyterian church, in organizing the Central Society in Antrim for the purpose of raising additional funds for the completion of the new church and disposing of the pews in the same. From and after the organization of the Central Society, the seventy subscribers took no further measures as a body for the erection of the church. By common consent the work was assumed and prosecuted by the society. The church was completed and dedicated in November, 1826: Pews were sold with this provision in all the deeds : "*Provided*, always, that said house shall remain to the use of the Presbyterian church and congregation, worshiping at or near the center of the town, and may not be appropriated to other uses without the consent of the ·church and congregation, being pew-holders." All financial and prudential affairs were managed at the annual meetings of the Central Society until 1838, after which no meeting was held until 1846. There is no evidence that the society held any meetings or transacted any business after 1852, except that in 1869, pursuant to a notice

issued by one of the proprietors at the request of a majority, a meeting was called and held under the name of the "Proprietors of the Center Meeting-House in Antrim," at which $325 was appropriated for repairs and raised by assessment upon the value of the pews. There is no evidence of publication in any newspaper of the proceedings for organization, or the intended organization, of the Central Society. From 1827 to 1852, meetings of the pew-holders were held, at which provisions were made for defraying certain expenses. There is no evidence that the pew-holders ever organized as a corporation, or adopted articles of association or by-laws, prior to 1893. December 11, 1852, sixty-eight persons, all of them members of the First Presbyterian Church and of the Central Society, organized themselves into a religious society under the provisions of R. S., c. 144, "for the purpose of supporting the preaching of the gospel, under the name and style of the First Presbyterian Society in Antrim." Annual meetings have been held from that time to the present, and regular provision has been made for the support of the pastor and for the other expenses of the church and society.

For more than sixty years the First Presbyterian Church occupied the meeting-house erected in 1826. Prior to 1891, the subject of building a new church in the South Village had been agitated on account of the changes which had taken place in the town. The people being unable to agree among themselves, the church appealed to the presbytery. A commission of the presbytery held a public hearing in the meeting-house at Antrim Center, September 18, 1891, and on October 7, 1891, made a report recommending that the church and session at Antrim be authorized and advised to erect a new church building at the South Village. They also recommended that the session hold meetings at the Center and North Village alternately, after the building should be erected, for such length of time as the best interests of the church might demand. The report was accepted and adopted by the presbytery. In accordance with this authority from the presbytery, a new church was erected at the South Village, and the first service was held in it on February 19, 1893. August 5, 1893, the First Presbyterian Society, at a meeting duly called and held, more than three fourths of all the members voting in the affirmative, voted "that the society sell their old meeting-house and all other property belonging to said society at the center of Antrim for the purpose of appropriating the proceeds of sale to the payment of any indebtedness and the use of the society at their new place of worship." May 24, 1894, and after the commencement of this suit, the session of the First Presbyterian Church voted unanimously to sell the property at the Center and became a party to the bill, alleging

that ever since the completion of the meeting-house at the Center they have been in the sole possession and control thereof, peaceably and uninterruptedly, until dispossessed by the defendants.

Some of the people were dissatisfied with the action of the church and society in building a new house at the South Village. July 24, 1893, none of the members of the Central Society was alive. On that date the defendant Bass and seventeen others, claiming to be more than one twentieth of the members of the Central Society and the owners of more than one twentieth of the property, signed an application to a justice of the peace, alleging that the society had failed to hold its annual meeting for that year and requesting that a meeting be called at the meeting-house to choose officers, adopt rules and regulations, and transact other business proper for an annual meeting. The meeting was called, Bass and ten others met at the time and place appointed, and voted to admit sixty-four other persons, " with the same rights and privileges as legal members." A moderator and clerk were elected, by-laws were adopted, and the following resolution passed: "*Resolved*, that the Central Society feel aggrieved at the dissension of the members who have left, and that the dissenting members be expelled." July 24, 1893, the same persons signed an application to the same justice, alleging that the applicants were more in number than one twentieth of the pew-holders in the meeting-house of the Central Society, that the pew-holders had failed to hold the annual meeting for that year, and requesting the officer to call a meeting to choose officers, adopt rules and regulations, and for other business. A warrant was issued, and a meeting was held at which officers were elected and a constitution and by-laws adopted. About April 15, 1893, the defendants took possession of the old meeting-house, removed the locks and put on new ones, and have held possession of the house and vestry ever since. They have organized a Congregational church and society, and hold, use, and occupy the property to the exclusion of the plaintiffs. The plaintiffs held one service in the house about September 1, 1893, and after the bill was filed, breaking into the house for that purpose, since which time they have not attempted to use the premises.

It is not necessary to consider whether the Central Society, which held no meetings for more than forty years until that called upon the application of the defendants, ever had a legal existence, or whether by common consent it was superseded by or merged into the regularly organized religious society known since December, 1852, as the First Presbyterian Society of Antrim. The fact is found that "land, house, and vestry have been in the possession of the First Presbyterian Church and

Society, and devoted to the uses of said church, continuously, uninterruptedly, and peacefully, from December, 1852, to the spring of 1893, the time when they were dispossessed by the defendants, except so far as the repairs made in 1870, voted at the meeting held December 18, 1869, may have been an interruption of possession." The repairs upon the meeting-house in 1870, pursuant to the vote of the meeting held December 18, 1869, must be held to have been made by the permission of the church and society, and do not constitute an interruption of the plaintiffs' possession. For forty years prior to 1893, no church, or society, or organization of any kind, had held any meetings, or exercised any control or dominion over the property, other than the First Presbyterian Church and Society. Their title to the property and their right to sell the same in accordance with their votes are indisputable.

Nor have the defendants any right to the property as pewholders. A pew-holder's right is only a right to occupy his pew during public worship, a right of occupancy subject to the superior right of the society owning the pew. *Jones* v. *Towne*, 58 N. H. 462. It is a qualified ownership, subject to the superior title included in the ownership of the house. A pew-holder cannot remove the pew, nor use it for any purpose except occupancy when the house is open for use, and pew tenancy is as accurate a designation of his interest as pew ownership. *Colby* v. *Society*, 63 N. H. 63. Whoever purchases a pew, purchases it subject to the right of the society or church to have the meeting-house where it will best accommodate the whole. *Fisher* v. *Glover*, 4 N. H. 180. "Pews or seats in a meeting-house or a place of public worship shall be deemed personal property." P. S., *c.* 220, *s.* 14.

*Case discharged.*

All concurred.