### TENNENT, STRIBLING & ELY SHOE COMPANY ET AL. V. JOHN T. PARTRIDGE.

#### No. 3045.

1. **Practice—Charge.**—A charge expressing the law upon an issue in the case was properly refused when the court in its general charge had included the principle and applied it to the facts more fully than as requested. See example.

2. **Evidence of Fraud.**—A sale by an insolvent debtor made to a creditor was attacked for fraud by other creditors. The creditor had had ample security for his debt in a vendor's lien note from the debtor. The note was surrendered to the debtor and it was at once given in security to other creditors. Subsequently the creditor bought the stock of goods of the debtor, satisfying his own debt and paying debts of others. *Held*, that the transaction in the surrender of the vendor's lien note did not affect the subsequent transaction by which the stock of goods was transferred, it not appearing that there was any connection between the two transactions.

3. **Fact Case — Fraud.** —See facts held sufficient to sustain a verdict negativing fraud in a sale by an insolvent debtor to one of his creditors, the creditor taking the goods in payment of his own debt and paying debts shown to be valid and owing to others.

4. **Payment.** — In part consideration of the stock of goods the creditor agreed to pay a named sum to another; he did not pay it in money, but gave his own note therefor, which was accepted by the other creditor. This was sufficient as a payment.

5. **Fact Case.**—See facts upon which judgment will not be reversed. The verdict negativing fraud had testimony to sustain it.

6. **Cases Adhered to.**—Seligson & Co. v. Brown, 61 Texas, 182; Oppenheimer v. Halff, 68 Texas, 412; and Elser v. Graber, 69 Texas, 222, adhered to.

APPEAL from Camp. Tried below before Hon. JOHN L. SHEPPARD. The opinion states the case.

*M. L. Morris* and *W. R. Heath,* for appellants.—1. Fraud of a part taints the whole transaction, and the proposition as contained in special charge refused should have been submitted to the jury. Rev. Stats., arts. 2465, 2466; Elser v. Graber, 69 Texas, 222; Lambeth v. McClinton, 65 Texas, 108; Black v. Vaughan, 70 Texas, 47.

2. A creditor of an insolvent debtor is not permitted to surrender security exempt from seizure or out of reach of other creditors, and take in satisfaction property which might have been subjected to the payment of the debts due other creditors, thereby aiding him to hinder, delay, and defraud his other creditors. Rev. Stats., art. 2465; Traylor v. Townsend, 61 Texas, 144; Seligson & Co. v. Brown, 61 Texas, 180.

3. A creditor purchasing from an insolvent debtor, with knowledge of his insolvency, is required to see that the excess in the price paid over and above his debt is paid to bona fide creditors, and failure to do so will vitiate such sale for fraud. Seligson v. Brown, 61 Texas, 180; Elser v. Graber, 69 Texas, 222.

4. A creditor may receive goods from an insolvent debtor in payment of his debt, but no more property must be transferred than is

necessary to pay the debt at a fair valuation. Allen v. Carpenter, 66 Texas, 138; Smith v. Whitfield, 67 Texas, 124; Oppenheimer v. Halff, 68 Texas, 409; Elser v. Graber, 68 Texas, 222.

*E. A. King,* for appellee.—A bona fide creditor may purchase enough goods from his insolvent debtor to reasonably satisfy his debt, and more, provided he sees that the excess be paid to other creditors of such insolvent debtor, such creditor paying therefor a reasonable market cash value of said goods.

COLLARD, JUDGE, *Section A.*—This is a suit of trial of right of property. Attachment suit was originally brought by Tennent, Stribling & Ely Shoe Company against L. G. Davis, and the writ levied upon certain merchandise, besides certain lands, as the property of L. G. Davis. Partridge, the appellee, claimed the personal property in the usual form under the statute by oath and bond. Issues were tendered and joined, plaintiffs alleging that the property was subject to the levy, and fraud between Partridge and Davis, and that the sale to Partridge was to hinder, delay, and defraud creditors of Davis; Partridge denying generally, and alleging that his purchase was in good faith in payment of a valid debt due by Davis to him, and that he agreed to pay and did pay the excess in price of the goods at a fair valuation to other bona fide creditors of Davis. Senter & Co. intervened and tendered issues, claiming that they had levied a second attachment on the same property. Their intervention was without leave of the court. May 13, 1890, there was verdict and judgment for claimant Partridge, from which plaintiffs and intervenors have appealed. Partridge by allegations and proof contended that he paid for the goods $1403.80—that is, his own note $886.30, Frank Newberry's note $174.32, debt due to N. A. Davis $278.09, and the taxes due $65.09. His proof shows that he held a note on Davis, which on the 30th of October, 1889, amounted to $1411, and on that day Davis sold him a storehouse and lot in Pittsburg for $250, and forty-seven acres of land adjoining and north of Pittsburg for $275, making in all $525, which being credited on the note left a balance due of $886. On November 4 following, Davis let him have the goods to pay the balance due on the note. They thought the goods were not worth over $1000, but when they were invoiced they ran up to $1871.73 at St. Louis cost, not including carriage; this amount was discounted at 25 per cent, or $467.93 taken off, leaving a balance of $1403.80, which was proved by defendant's evidence to be a fair cash valuation, but by plaintiff's evidence to be less than value. This amount exceeded the debt of Partridge, and he agreed to pay a debt of L. G. Davis of $278.32 to N. G. Davis; also $174.32 due to F. M. Newberry, and the taxes due, $65.09, as alleged. He did not pay N. A. Davis in money, but the latter owing him for borrowed money the amount was

credited on the note; nor did he pay Newberry in money, but gave him his note and took up Newberry's note against L. G. Davis, which he produced in court. He said he was holding it for protection, as something might come up in Davis' affairs. Davis was insolvent, owing some $18,000 or $20,000, and made these arrangements to secure his home creditors. Partridge knew of his condition at the time he bought the goods. Partridge's debt against Davis was a valid debt for borrowed money three or four years past, and he had been assured by Davis that he would be protected. Plaintiffs' writ was levied on the 7th day of November, 1889, and it was levied on some real estate as well as on the goods. After Partridge bought the goods he commenced selling by retail, and employed G. W. Davis, brother of L. G. Davis, to clerk for him, and continued to sell two or three months, and sold what they could and closed the house, leaving some of the goods on hand. He has not yet, he says, "realized the amount of his debt owing to him by Davis."

There is no brief on file for Senter & Co., though they assigned errors.

The first error assigned by appellants, the Tennent, Stribling & Ely Shoe Company, appearing in their brief, is that the court erred in refusing to submit to the jury a special charge asked, that if the consideration or any part of it in the sale from L. G. Davis to J. F. Partridge was fraudulent it would vitiate the entire transaction.

This charge is the law expressed in a general way; but it seems that the charge of the court included the principle, and was more applicable to the case. Brown v. Vaughan, 70 Texas, 49.

The court's charge on the subject was: "If you believe from the evidence that Partridge was, on or before the 4th day of November, 1889, a bona fide creditor of L. G. Davis; that on or before said date Davis had become insolvent, and that he and Partridge agreed with each other that the latter should take possession of the goods involved in this controversy for the purpose of placing the same beyond the reach of Davis' creditors, with a fraudulent intent to hinder and delay such creditors in the collection of their debts, you will find for plaintiffs; or if you believe that at said time and place L. G. Davis was insolvent, and that Partridge was a creditor of Davis, and that Partridge purchased the goods involved in this suit in good faith for the purpose of collecting his debt, and that he paid a reasonable cash market price therefor, and if you believe that the goods were of some cash value in excess of the debt of Partridge, and that such excess was not paid to the bona fide creditors of Davis, but that such excess or a part thereof was paid to a person or persons holding fictitious claims or fictitious debts against L. G. Davis, you will find for plaintiffs; or if you believe that the goods were of a cash market value in bulk on the market at

the time and place where they were purchased more than Partridge paid for them, you will find for the plaintiffs."

In the first part of the charge the court fully instructed the jury as to the law that would subject the goods to the levy, that if Davis was insolvent and Partridge knew the fact and purchased the goods with such knowledge the goods would be subject to the levy, and the verdict should be for plaintiffs, unless Partridge paid a fair price for them with a valid debt due him by Davis, and other valid debts, etc. The court's charge was comprehensive and definite, and embraced every issue involved. There was no error in refusing the requested charge.

Appellant complains of the verdict, upon the ground that the evidence showed that Partridge held a valid note of Dupree to Davis for $1500, secured by vendor's lien on 397 acres of land as collateral, ample security for his debt, which he surrendered, and took instead the storehouse, the forty-seven acres of land, and the goods, thereby enabling Davis, who was insolvent and known to be so by Partridge, to hinder, delay, and defraud his creditors, and to place his property subject to execution beyond the reach of his creditors. The facts about the note are: It was turned over to Partridge as collateral by Davis in the spring of 1889, and Partridge kept it until about a week before he bought the goods. The note was worth the amount it called for. About a week before the purchase of the goods, and before the purchase by Partridge of the storehouse and the forty-seven acres of land, E. A. King, one of the law firm of King & Eddins, went out to Partridge's house, some seven miles from Pittsburg, in a buggy, with an order from L. G. Davis for the Dupree note, and Partridge then gave it to him, and he (King) has kept it in his office ever since. Davis was indebted to King & Eddins for services in 1889 and up to the time of his failure about $1200, and he turned over the note to them to secure their debt. It does not appear positively that Partridge knew the condition of Davis' affairs at the time he surrendered the note, but it may be inferred from the testimony that he did. He says he knew it when he bought the storehouse, the land, and the goods. He also says he did not fear to surrender the note to Davis, as the latter had assured him he should not lose anything, and that he was willing to trust him. He asked no questions when he surrendered the note, and gave it up willingly.

It was decided in Seligson & Co. v. Brown, 61 Texas, 182, that a purchaser would not be allowed to enable an insolvent debtor to evade his creditors by paying for his property subject to execution in money or negotiable notes which could not be reached by legal process, even though the debtor may have intended at the time to use the same in payment of debts, there being no guaranty to creditors that such intention would be carried out. The principle in that case is not the same as in the case at bar. Partridge surrendered a valuable security

and took the risk of being protected in some other way, with no understanding or agreement as to how it was to be done. This was not in consideration of the sale of the goods or the real estate, and not in contemplation of it. He expected to be paid, but he had no guaranty of it and asked for none; he trusted Davis and was left without any security. The act was to be judged of by the jury as of its date, and it was for them to say whether it was done with a fraudulent intent. All the circumstances were before the jury for their consideration, and it is not the province of the court to say the verdict was wrong, it not being a fraud per se. The question does not arise upon a charge refused or asked, as in the case of Seligson v. Brown, but upon an issue of fact—fraudulent intent or not. It (the surrender of the security) was not shown or pretended to be a bonus for the subsequent sale, any inducement for it, or in anywise connected with it; at least the verdict so declares. Nor is it shown that it was done or intended to enable Davis to evade his creditor. On the contrary, the note was at once turned over to King & Eddins to secure their debt, in which we are not prepared to say there was any fraud. Oppenheimer v. Halff, 68 Texas, 412. This was all done before the settlement with the debtor and creditor. We do not say that the verdict might have been different, but that the verdict settles the question.

Appellant contends that there was error in the verdict, in that the evidence showed that Partridge paid part of the excess of the price of the merchandise over and above his debt, to N. A. Davis, a son of L. G. Davis, who was not a bona fide creditor of L. G. Davis, and he knew or might have known that fact.

N. A. Davis is shown to be a man of considerable means. He was security for his father on two notes, which he paid, and he borrowed some money for him, his father becoming his security, which money he let his father have—the whole sum so due him amounting to $2236. This was in part paid in property delivered to N. A. Davis on October 30, 1889, leaving a balance still due of $278.32. During these transactions and settlements N. A. Davis owed his father $500, his store account, which he paid in money on November 4, 1889. During the month of October, 1889, L. G. Davis deposited in bank in his son's name considerable money, not as much as $4000. He was authorized to use his son's name, had often borrowed money from the bank, and signed his name to the note for the same. On November 4, 1889, N. A. Davis went to the bank and drew out the money and paid his father part of it, $2250, and his store account, $500. The rest of the money belonged to N. A. Davis. When he took the money from the bank he paid some small claims against L. G. Davis that the bank had traded for. The balance due N. A. Davis of $278.32 was not settled between them, but remained as it was before. This is the debt assumed by Partridge, and by him paid by giving N. A. Davis' note to him credit for that

amount. It is not shown that Partridge knew of the transactions between N. A. Davis and his father, nor how the debt came to be due. He testified in reference to this: "I agreed to pay and did pay N. A. Davis out of said proceeds $278.32. I was instructed to pay said sum to N. A. Davis by L. G. Davis, who said he owed N. A. Davis. I did not pay the money to N. A. Davis, but as he owed me borrowed money I gave his note credit for the sum. L. G. Davis and N. A. Davis both said that L. G. Davis owed N. A. Davis more than the $278.32 that I credited on N. A. Davis' note before I placed the credit on the note. I made no other inquiry about it."

Our conclusion from the testimony as above stated is, that the debt of $278.32 was not paid by Davis to his son, and that it was subsisting as between them at the time Partridge agreed to pay it, and did pay it by credit on N. A. Davis' note. It was not a fictitious debt. As between father and son it may be said there was fraud as against the creditors of L. G. Davis in paying the store account in full when the $278.32 was due the son. Yet the debt existed between Davis and son, and was not a fictitious debt. Partridge would not be responsible for the fraud by Davis and his son against creditors if he did not know it and was not put upon inquiry concerning it. To hold otherwise would be to countenance a fraud upon Partridge by Davis and son, provided he acted in good faith, as the jury by their verdict said he did.

We can not say, as asked by the fourth assignment of error, that the evidence showed there was not so much a desire on the part of Davis to pay defendant, or on the part of defendant to collect his debt, as there was to place the property of L. G. Davis beyond the reach of his creditors. Nor can we set aside the verdict, as requested in the fifth assignment, upon the alleged ground that the price paid for the storehouse, the land, and the merchandise was not fair and reasonable, but was much below its market cash value. The evidence adduced by defendant supported the verdict. The evidence adduced by plaintiffs showed that the property was worth more than was paid for it. We can not reconcile the conflict of evidence in this court.

We have assumed in the review made of the case that Partridge knew Davis' insolvent condition at the time he received the goods, and hence it is not necessary to comment on the point raised in the sixth assignment, that he would be chargeable with the knowledge his attorneys had of the fraud.

We do not think we should set aside the verdict on the alleged ground that there was collusion on the part of Partridge with Davis in settling what the latter owed Newberry. Appellants' assignment on this point says that there was such collusion, "that the evidence shows that defendant had not paid off the Newberry note, but still held it (having taken a transfer from Newberry) against Davis, and to this extent failed to pay the excess of merchandise bought, to a bona fide creditor of

Davis." The only evidence upon this issue is that of Partridge. He says: "I did not pay Newberry the money, but gave him my note for his debt and took up Newberry's note against Davis and still hold it." He drew it from his pocketbook and exhibited it, and stated that "he thought something might come up in Davis' affairs and he was holding it for protection." There is no intimation in this evidence of collusion with Davis. The evidence does not show that the note was transferred to Partridge, but it does show that it was paid and taken up by him.

The only remaining assignment of error is a recapitulation and summing up of particular assignments before noticed, and need not be again considered.

Finding no error in the judgment, we conclude it ought to be affirmed.

*Affirmed.*