WRIGHT v. HOLLYWOOD CEMETERY CORPORATION et al.

1. The right of sepulture in a given cemetery lot existed as to a decedent whose deceased parent was while in life the owner thereof, and who as heir at law of that parent inherited an undivided interest in the lot.
2. A grandmother with whom a grandchild having no living parent resided at the time of such grandchild's death had the legal right to cause the body to be buried in a lot wherein there was, relatively to the decedent, a lawful right of sepulture.
3. A brother of the decedent, though a minor, had the right to participate with the grandmother in causing such burial to be made.
4. An unlawful and unwarranted interference with the exercise of such right of burial was a tort, which gave to the grandmother and brother a cause of action against the wrong-doer, and they were entitled to maintain the same without joining with themselves as a party plaintiff a non-resident sister of the decedent, who was not present when the attempt to bury the remains was made.
5. In a suit for an unlawful and unwarranted interference with the exercise of such a right of burial, if the injury inflicted upon the plaintiffs was wanton and malicious, or the result of gross negligence, or reckless disregard of the rights of others, equivalent to an intentional violation of them, exemplary damages may be awarded, in estimating which the injury to the natural feelings of the plaintiffs may be taken into consideration.
6. When upon the hearing of a demurrer to a petition the court passed an order in effect striking a portion thereof and limiting the plaintiffs' right of recovery to specified items, their right to except to such order was not lost because they consented to so much of a verdict which the court directed in their favor as related to the amount they were entitled to recover upon such items.

Argued January 10,—Decided March 1, 1901.

Action for damages. Before Judge Candler. Fulton superior court. August 4, 1900.

*Bennett J. Conyers* and *Lavender R. Ray*, for plaintiffs.
*Arnold & Arnold* and *H. H. Dean*, for defendants.

FISH, J. Jane Wright and James Carlton, a minor, who sued by his next friend, Jane Wright, brought suit against the Hollywood Cemetery Corporation and C. M. Curran. The petition made substantially the following case: On the 11th of February, 1893, Annie Carlton purchased of the "Hollywood Cemetery Co." a certain described lot in Hollywood cemetery, "for a burial place for herself, her children, and the members of her family, and received a deed of conveyance to the same." She died in December, 1894, and her body was buried in said lot. In December, 1897, the "Hollywood Cemetery Corporation" purchased "the land and lots in said cemetery belonging to said 'Hollywood Cemetery Co.' on

Nov. 3, 1897, and which had not been previously sold by" the latter company; "and at once assumed the control of said cemetery, the care of the same, and assumed to itself the privileges and right to dig the graves for all bodies to be buried therein and charge for the same." The defendant Curran is a stockholder in the defendant company, the owner of lots in, the cemetery, and was, at the time of the wrongful acts complained of, "acting agent for said corporation." Upon the death of Annie Carlton, the title to the lot in the cemetery which she had purchased vested in her children, Ludie Carlton, James Carlton, and Isabella Carlton Doyle. After the death of their mother, Ludie and James Carlton made their home with the plaintiff, Mrs. Jane Wright, their grandmother and the mother of Annie Carlton. Ludie Carlton died on the 30th of March, 1898, at the home of Mrs. Jane Wright, in the city of Atlanta, Ga. "By reason of the near relationship and the fact that she resided with . . petitioner, Mrs. Jane Wright, during life, and was under her care and protection, . . petitioners became entitled to the possession of the body of said Ludie Carlton, for the purpose of interment, and the duty and responsibility devolved upon . . [them] to give to it a Christian burial." On the 31st of March, 1898; petitioners notified the defendant corporation "of the death of said Ludie Carlton and of their purpose to bury her body in said lot by the side of the body of her mother, and on that day contracted with the defendant corporation "to dig and prepare the grave in said lot," paying in advance for the same. "The Hollywood Cemetery Corporation, at the time, well knew that said lot had been previously sold to said Annie Carlton, that her body was buried in the same and that the title to said lot was in her children, and that . . petitioners had the right to bury the body of . . Ludie Carlton in the said lot." On April the 1st, 1898, the petitioners, with the corpse, and a funeral procession composed of friends and relatives, proceeded from their home to said cemetery, a distance of about six miles. On arriving at the cemetery, "defendants wrongfully refused to allow said funeral procession to enter said cemetery, and rudely and heartlessly notified . . petitioners that the body of said Ludie Carlton could not be buried upon said lot, although the grave had been prepared to receive the same." The "petitioners, being greatly grieved and perplexed, were at a loss to know what to do with the body of the

grandchild and sister, and were finally forced to seek out a distant burial [place] and lay said body in a pauper's grave among strangers." "By reason of said wrongful acts, . . petitioners were greatly pained and mortified, their feelings hurt, and they were humiliated in the presence of their friends and others." The petition alleged that, by reason of these wrongful acts of the defendants, the plaintiffs had been injured and damaged in the sum of two thousand dollars, and, in addition thereto, set out, as actual damages claimed, certain amounts as the cost of digging the grave, cost of conveying the body to the cemetery, and for time lost in finding another grave. There was also a prayer that the defendants be permanently enjoined from interfering with, or preventing, the burial of the body of Ludie Carlton upon the lot in question, or the burial of any of the heirs at law of Annie Carlton therein, or the bodies of any other persons who might rightfully be buried therein.

By an amendment it was alleged that, at the time the lot was purchased by Annie Carlton, the cemetery was laid off in avenues, driveways, and walks, and the lot fronted upon one of said ways, and that the petitioners and the funeral party had the legal right to pass over said ways, for the purpose of reaching said lot and burying the body of Ludie Carlton therein; and that the defendants wrongfully took possession of the entrance to the cemetery, its avenues, driveways, and walks, and refused to allow petitioners and denied to them the right to pass over the same for the purpose aforesaid. It was further alleged that, on the 31st of March, 1898, the petitioners, being in possession of the lot, gave to the defendants authority to enter therein, for the purpose of preparing the grave, and the defendants, having entered the lot for this purpose, wrongfully held the same and refused to allow petitioners and denied them the right to enter the lot for the purpose of burying the body of Ludie Carlton therein, but, with a show of force and without authority of law, held the same against petitioners until they were turned away from their family burying-ground. It was also alleged that there never had been any administration upon the estate of Annie Carlton; and that Isabella Carlton Doyle was at the time of said wrongful acts a non-resident, was not present with the funeral procession, nor then a resident of the county.

Each of the defendants demurred to the petition, upon the

grounds: (1) That it contained no grounds for relief, legal or equitable. (2) There was a misjoinder of parties plaintiff. (3) The plaintiffs could not alone maintain the suit, "there being a nonjoinder of other parties, as the petition discloses, equally or more interested than petitioner." (4) "The damages sought to be recovered are not recoverable, because too remote and contingent, and because damages for pain and suffering, mental anguish, and such items as are sued for in said petition are not recoverable in this action." Before the court passed upon the demurrers, "the plaintiffs moved to make Isabella Carlton Doyle a party plaintiff, and, to that end, presented her petition in the following words: 'And now comes Isabella Carlton Doyle, sister and next of kin to said Ludie Carlton, and prays to be made a party plaintiff in said suit.'" This motion was denied by the court. Upon the demurrers, the court rendered the following judgment: "Upon demurrer this suit as amended is dismissed, except so far as the plaintiffs seek to recover the cost of digging the grave, the cost of conveying the body to the cemetery, and the lost time in finding another grave." To this judgment the plaintiffs filed exceptions pendente lite. "On the trial the jury, by direction of the court, rendered a verdict . . . in favor of the plaintiffs for $11.50, besides costs and witness fees, by consent as to amount and costs; and defendant consented to direction of verdict without any qualification at all."

1. Taking the allegations of the petition to be true, the defendants had no right whatever to prevent the interment of the remains of Ludie Carlton in the lot, in Hollywood cemetery, where the plaintiffs sought to bury them. In February, 1893, Annie Carlton, the mother of Ludie Carlton, purchased this lot from the Hollywood Cemetery Company, the then owner of the cemetery grounds, "for a burial place for herself, her children, and the members of her family, and received a deed of conveyance to the same." In December, 1894, she died and her body was buried in this lot. Upon her death the title to the same descended to her children, as her heirs at law. *Jacobus* v. *Children of Israel*, 107 *Ga.* 522. Ludie Carlton at the time of her death, as one of these heirs at law, owned an undivided interest in this lot, and the right of sepulture therein. Therefore whoever had the right to bury her remains had the right to inter them in this lot.

2. Who had the right to bury this dead body? Somebody had

the right, and upon somebody devolved the duty of properly disposing of it.    In reference to the disposition of the remains of the dead, in all civilized countries, the law has a due regard for the public health, common decency, and the feelings and sensibilities of the relatives and friends of the deceased.    At common law, a corpse can not be cast out, so as to expose it to violation, or to offend the feelings or endanger the health of the living, but must be properly interred and the body must be carried to the place of interment decently covered.    And it seems that, in the absence of those who can claim the right by relationship, this duty devolves upon the householder under whose roof a person dies.    Perley, Mort. Law, 38; Reg. v. Stewart, 12 Ad. & El. 773.    Except where the decedent leaves a husband or a wife surviving, the right to properly dispose of the dead body belongs to the next of kin.    8 Am. & Eng. Enc. L. (2d ed.) 836; Perley, Mort. Law, 33; Matter of Brick Presb. Church, 4 Bradf. (N. Y.) 503; People v. St. Patrick's Cathedral, 58 How. Pr. 55; In re Donn, 14 N. Y. Supp. 189; Wynkoop v. Wynkoop, 42 Pa. St. 293.    The next of kin of Ludie Carlton were her sister, Mrs. Isabella Carlton Doyle, and her brother, James Carlton. Mrs. Doyle was a non-resident, was not present when the attempt was made to bury the remains of Ludie Carlton in Hollywood Cemetery, nor was she then in Fulton county, where the deceased died and where this cemetery is located.    She was absent from the scene of action, and was not moving in the matter.    The nearest of kin upon the scene was James Carlton, who was a minor.    Ludie Carlton, the decedent, and James Carlton had been, since the death of their mother in 1894, and up to the death of Ludie in 1898, living with Mrs. Wright, their grandmother.    Mrs. Wright took the place of their dead mother, and they were under her care and protection.    Under these circumstances, we think both the right and the duty of giving to the remains of Ludie Carlton a decent, Christian burial devolved upon Mrs. Wright.    In People v. St. Patrick's Cathedral, supra, there was a proceeding by mandamus instituted by three brothers, who were the nearest of kin to one Dennis Coppers, deceased, with the exception of two children of the ages of nine and thirteen years, respectively, to compel the interment by the respondents of the body of the deceased in Calvary cemetery, in a lot purchased by him, and in which, he, in his will, directed that his body should be buried.    It was held, that as there

were no executors qualified to act, and no children of Dennis Coppers of sufficiently mature years to determine what should be done, his three brothers, as the next of kin of full age, had the right to act in the premises and to compel the interment of the remains of their brother in the lot in question. Westbrook, J., in delivering the opinion, said: " Is the law so inhuman as to declare that these brothers, who are the nearest of kin to the deceased, who are of the age of discretion, have no standing in court to effect their pious and loving intent ? No attempt will be made to dispute the proposition of the learned counsel for the defendants, that the relators and plaintiffs are not 'the next of kin,' for as the deceased left children they could not be; but the admission of that proposition does not admit the conclusion for which they contend. As the next of kin of full age, the plaintiffs and relators, in view of the helplessness and infancy of the children of the dead brother, owed to that stricken family the moral duty at least, and, perhaps, the legal one, of superintending the burial of the remains. If that duty was not one which the law would compel, it will at least respect when it is voluntarily assumed, and it will not close the doors of its courts to those who are seeking to have that done which humanity warmly commends."

The English case of Jenkins v. Tucker, 1 H. Bl. 90, decided in 1788, recognized the right of a father, whose daughter died in England while her husband was absent in Jamaica, to provide for and direct the burial of the remains, although he, in the language of Lord Loughborough, "acted in discharge of a duty which the [husband] was under a strict legal necessity of himself performing, and which common decency required at his hands;" and the court held that the husband was liable for the money which the father expended on this account. Mrs. Wright was the next of kin of full age who was present and fully capable of asserting a legal right in the matter; her granddaughter had died not only under her roof but as a member of her family. We therefore think that she had the legal right to move in the matter, and to provide for the proper interment of the remains. Certainly when, with the consent and cooperation of James Carlton, the young brother of the decedent and the nearest of kin who was upon the scene of action, she undertook to inter the remains of Ludie Carlton, the defendants could not have had even the semblance of an excuse for questioning her

right to do so. She had the legal right to cause the body of her dead grandchild to be buried in the lot in Hollywood cemetery, where there was, relatively to the decedent, a lawful right of sepulture.

3. James Carlton, the brother of the decedent, though a minor, had the right to participate with the grandmother in causing such interment to be made. This is not a case where relatives of a deceased person are asserting conflicting claims to the custody and disposition of the remains of the dead; and where the court must determine precisely to whom these rights legally belong. There was no conflict of claims in this matter between James Carlton and his grandmother. They were acting in unanimity of sentiment and harmony of purpose. Though a minor, he, by the ties of blood and natural affection and the fact that he was next of kin to the deceased, had the right to participate with the grandmother in burying the remains of his sister, and to cause the interment to be made in a cemetery lot in which the decedent owned, at the time of her death, an undivided interest. When he and the grandmother attempted to bury the corpse in this lot, no one had the right to interfere and prevent the accomplishment of this commendable purpose. He, as well as Mrs. Wright, the grandmother, had the right to free and unobstructed access to the cemetery, to the use of the necessary driveways and approaches to the lot, and, without let or hindrance, to bury the corpse therein. Besides, as the owner of an undivided interest in this cemetery lot, he had the right to free and unobstructed access thereto for any lawful purpose whatever.

4. It necessarily follows that an unlawful and unwarranted interference with the exercise, by Mrs. Wright and James Carlton, of their right to bury the body of Ludie Carlton in this cemetery lot was a tort which gave to them a cause of action against the wrong-doer, or wrong-doers. They were entitled to bring this action without joining with them, as a party plaintiff, the non-resident sister of the decedent. This sister had not attempted to exercise her rights in the matter. She took no part in the attempted burial of the remains of Ludie Carlton in this cemetery lot; and, therefore, the defendants did nothing to prevent her exercising any right which she may have had in the premises. The wrong and the injury were to those who were attempting to exercise their legal rights, who were moving in the matter, and who were, by the unlawful conduct of the defendants, prevented from exercising these rights.

5. The court sustained the demurrers and dismissed the suit, "except so far as the plaintiffs [sought] to recover the cost of digging the grave, the cost of conveying the body to the cemetery, and the lost time in finding another grave." The court was evidently of the opinion that the plaintiffs could only recover the actual damages sustained by them. The Hollywood Cemetery Corporation had agreed with the plaintiffs "to dig and prepare the grave in said lot for the burial of the body," and the plaintiffs had paid, in advance, for this service, the corporation thus impliedly recognizing the right of the plaintiffs to bury the body upon this lot. Under the ruling of the court, the plaintiffs, could only recover the actual damages which grew out of and were incident to the violation of this contract. This ruling of the court was clearly erroneous. As we have seen, irrespective of this contract, the plaintiffs had a good cause of action against the defendants, arising out of their right to bury the body of Ludie Carlton in this cemetery and in this lot, and the tort committed by the defendants, in preventing them from exercising this right, and in refusing to allow them, with the body of their loved one and the "funeral procession composed of friends and relatives," to enter said cemetery for this purpose. The main injury in this case was the mental distress occasioned to the plaintiffs by the unwarranted and outrageous conduct of the defendants. "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." Civil Code, § 3906. It seems to us to require no argument to demonstrate that this section of the Civil Code is applicable to the present case, and that under its provisions the jury could have awarded exemplary damages to the plaintiffs. After traveling for about six miles with the dead body of their near and beloved relative and a funeral procession of relatives and friends, and reaching the gate of a cemetery in which they had a perfect legal right to inter the remains, and in which the defendant corporation had, under a contract with them, prepared the necessary grave, and received, in advance, pay for this work, they were suddenly and unexpectedly halted, denied access to the grounds for the purpose of the burial, and turned away, to find, as best they could, another place of interment. Surely this was a tort in which there were aggravating cir-

cumstances in the act, if not in the intention, and one which must have deeply wounded the natural feelings of the plaintiffs. This court held in *Jacobus* v. *Children of Israel*, supra, that, "In a suit for damages for wrongfully disinterring a dead body, if the injury has been wanton and malicious, or is the result of gross negligence or reckless disregard of the rights of others, equivalent to an intentional violation of them, exemplary damages may be awarded, in estimating which the injury to the natural feelings of the plaintiff may be taken into consideration." This principle is clearly applicable to the case in hand. The two cases are analogous, and the torts involved in them are of a kindred character. In each case the actual damage sustained was comparatively slight, the principal injury being to the natural feelings of the plaintiffs, which had been wounded and outraged by the unlawful conduct of the defendants. In each, the injury, if not wanton and malicious, was occasioned by a reckless disregard by the wrong-doers of the rights of others, equivalent to an intentional violation of them. Under the facts of this case, as alleged in the petition, the judge erred in ruling that the plaintiffs could only recover the actual damages sustained. The allegations made a case for exemplary damages.

6. It is contended by counsel for defendants in error that even if the court erred in striking, upon demurrer, a portion of the plaintiffs' petition, thereby limiting the right of recovery to the actual damages alleged and specified in the petition, the plaintiffs have no right to a reversal of the judgment of the court, because they consented to a verdict thereafter in their favor. It appears from the record that, after this ruling was made, "defendants' counsel admitted in open court that the plaintiffs had incurred an expense of eleven dollars and fifty cents, in the digging of the grave and in conveying the body of Ludie Carlton to the cemetery." The bill of exceptions recites that "On the trial the jury by direction of the court rendered a verdict . . in favor of the plaintiffs, for $11.50 besides costs and witness fees, by consent as to amount and costs, and defendant consented to direction of verdict without any qualification at all." From this it appears that the plaintiffs simply agreed that the amount which they were entitled to recover for the item of actual damages specified in the petition was $11.50, and consented that, under the ruling of the court, the verdict should be for this amount and the costs of the suit. The plaintiffs did not thereby

lose their right to except to the order of the court striking that portion of their petition which claimed damages for the mental pain, mortification, and humiliation which they suffered in consequence of the wrongful acts of the defendants. The consent of the plaintiffs to the amount of the verdict, fairly construed, meant no more than this, that, as the case then stood, after the court had stricken from the petition all the allegations in reference to the injury to the natural feelings of the plaintiffs and the claim for damages based thereon, they consented that the amount which they were entitled to recover was $11.50 as actual damages, and the costs of the suit. Notwithstanding this consent as to the amount for which the verdict, upon the petition as it then stood, should be rendered, the plaintiffs had the right to except to the judgment of the court upon the demurrers, which they did, pendente lite. It is unnecessary to determine whether or not the plaintiffs had the right to move for a new trial in a case in which they had consented to the verdict, for no motion was made to dismiss the motion for a new trial, but it remained pending in the court until it was overruled by the judge, and so long as it was pending the case awaited final disposition there. After it was overruled the plaintiffs had a right to except to this final judgment in the case and bring the case here for review, and could assign error in their bill of exceptions upon the ruling of the court upon the demurrers, which they excepted to pendente lite. A motion for a new trial, if not improper, was unnecessary, the plaintiffs having the right, after the judgment was entered upon the verdict, to file a bill of exceptions for the purpose of bringing to the Supreme Court, for review, the ruling of the court striking the main portion of their petition. For this ruling swept from the case the plaintiffs' main claim for damages, and converted a suit in which they claimed $2,000 for the injury to their natural feelings and the denial to them of a legal right, and $55.50 for actual damages sustained, into a mere suit for the latter sum as actual damages. After this was done, the plaintiffs were obliged to await the final disposition of the case in the court below before they could bring here for review the ruling which wrought such havoc in their case; and when final judgment was rendered they were not compelled to except to such judgment, but could bring the case here upon their exceptions to the ruling which so greatly restricted their right of recovery and injured their case. *Haskins* v. *Bank,* 100 *Ga.* 216.

The act of Dec. 20, 1898 (Acts 1898, p. 92), makes provision for just such a case as this. It provides that where "the judgment, decree, or verdict has necessarily been controlled by one or more rulings, orders, decisions, or charges of the court, and the losing party desires to except to such judgment, decree, or verdict, and to assign error on the ruling, order, decision, or charge of the court, it shall not be necessary to make a motion for a new trial, nor file a brief of the evidence, but the party complaining shall be permitted to present a bill of exceptions containing only so much of the evidence or statement of facts as may be necessary to enable the Supreme Court to clearly understand the ruling, order, decision, or charge complained of." The verdict in this case was necessarily controlled by the ruling of the court, striking the main portion of the plaintiffs' petition and restricting their right of recovery to the actual damages set forth and itemized in the petition. The plaintiffs could, therefore, without any motion for a new trial, have brought the case here by a direct bill of exceptions, complaining of this ruling of the court. They are here now with a bill of exceptions which assigns error upon this ruling. It can not hurt their case in this court that they made an unnecessary motion for a new trial, which motion was, without objection on the part of the defendants, entertained and passed upon by the trial judge. That motion, at least, served to keep the case pending in the trial court until the motion was disposed of, and until then the exceptions pendente lite prevented the time limitation from running against the right of the plaintiffs to except to the ruling of the court upon the demurrers, and in due time after the judgment of the court upon the motion was rendered the bill of exceptions was sued out.

*Judgment reversed. All concurring, except Simmons, C. J., absent.*