FINLEY v. ATLANTIC TRANSPORT CO., Limited.

(Supreme Court, Special Term, New York County. May 4, 1915.)

1. DEAD BODIES ⬩1—BURIAL—RIGHT OF SON—DAMAGES FOR INTERFERENCE.

A son has a legal right to the solace of burying the body of his father, which entitles him to recover damages from one who wrongfully interferes therewith.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 1, 2; Dec. Dig. ⬩1.]

2. DEAD BODIES ⬩9—BURIAL—LIABILITY FOR INTERFERENCE—COMPLAINT.

A complaint seeking such damages, which alleges that plaintiff's father died on the steamship, that his body was properly embalmed, so as to prevent decomposition until after port was reached, that the defendants took possession of the effects of deceased, among which were plaintiff's name and address, and sufficient money to pay for notifying plaintiff and properly caring for the body, but that while the body was in a perfect state of preservation, and when the ship was only a few hours from port, the body was cast into the sea, alleges a wrongful and willful violation of plaintiff's right to the solace of burying the body.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 13, 14; Dec. Dig. ⬩9.]

---

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. EVIDENCE ⊙⇒10—JUDICIAL NOTICE—HIGH SEAS.

Where the complaint alleged that the body was cast into the sea in or near the tidal waters off Nantucket Shoals, the court cannot take judicial notice that it was on the high seas outside the three-mile limit.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 9–14; Dec. Dig. ⊙⇒10.]

4. DEAD BODIES ⊙⇒9—BURIAL—RIGHT OF SON—ACTIONS—PARTIES.

The right of a son to the solace of giving his father's body a proper burial vests in him as a son, and not in a representative capacity as one of the next of kin, and he can bring an individual action for the violation of that right without joining the other relatives of deceased, who may themselves bring similar actions for the interference with their right because of the same act of the defendant.

[Ed. Note.—For other cases, see Dead Bodies, Cent. Dig. §§ 13, 14; Dec. Dig. ⊙⇒9.]

Action by H. Blair Finley against the Atlantic Transport Company, Limited. On motion of plaintiff for a judgment on the complaint and the demurrer thereto. Motion sustained, with leave to the defendant to withdraw the demurrer and answer.

Gilbert H. Montague, of New York City (Walter D. Wile, of New York City, of counsel), for plaintiff.

Burlingham, Montgomery & Beecher, of New York City (Norman B. Beecher and George H. Emerson, both of New York City, of counsel), for defendant.

SHEARN, J. The complaint shows that plaintiff is the son of Clement B. Finley, deceased, who died on board the defendant's steamship Minneapolis while a passenger on the voyage from London to New York, leaving "no wife living, nor any relative nearer than the plaintiff"; that upon the death of the deceased the defendant took possession of his property and effects, valued at $750, "which amount greatly exceeds the sum that would have been required to defray the expenses of notifying the plaintiff of the death of the deceased and embalming the body of said Clement B. Finley and transporting it to the said city of New York and there giving it a decent burial"; that among said effects of the deceased which the defendant took into its possession were letters showing that the plaintiff was the son of the deceased, and showing where the defendant might communicate with the plaintiff; that the defendant thereafter embalmed the body of the deceased, so that it became proof against decomposition for a period greatly exceeding the time needed to bring the body to port: "that the defendant negligently, wrongfully, and willfully failed and refused to notify said plaintiff, or any of the next of kin of said Clement B. Finley," of his death; that four days later, however, while in or near tidal waters off Nantucket Shoals, and only a few hours from port, the defendant "negligently, wrongfully, and willfully failed and refused to transport the body of said Clement B. Finley to the docking point of said steamship in said city of New York," and "negligently, wrongfully, and willfully caused said body to be cast into the sea in or near the said tidal waters off Nantucket Shoals in a place unknown and inaccessible to the plaintiff, or to any of the next of kin of said Clement B. Fin-

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ley"; that thereafter the defendant notified the plaintiff of the death of the deceased, and the plaintiff notified the defendant that he would procure an undertaker to meet the steamship and take charge of the body; that in fact the plaintiff and said undertaker, at the request and with the knowledge and approval of all the next of kin, did meet the steamship and demanded possession of the body, and were then informed that the body had been disposed of at sea as above described; that "by reason of said acts of the defendant above mentioned the plaintiff was greatly shocked and wounded in feelings, and was caused great mental distress, anguish, and suffering, and was caused considerable expense, by reason whereof the plaintiff has been damaged in the sum of $3,000." The defendant demurs to this complaint on the ground that there is a defect of parties plaintiff and that the complaint fails to state a cause of action.

[1] Rights in connection with the burial of dead bodies have come before the courts generally in two ways: (1) To recover damages for the mutilation of the body; and (2) to determine where the place of burial shall be. The first class of cases is illustrated by the case of Foley v. Phelps, 1 App. Div. 551, 37 N. Y. Supp. 471, where it was held that the person entitled to the possession of the body in order to bury it had a right of action for injury to his feelings against any one who had, without authority, mutilated the body. A valuable discussion of the general subject of rights in dead bodies is found in Matter of Widening of Beekman Street, 4 Bradf. Sur. 503. While the circumstances presented in this case are unique and entirely different from those in any of the adjudicated cases, the principle upon which the cause of action is based may be readily derived from the adjudicated cases. The principle governing the disposition of the case is equally clear as a matter of independent reasoning.

The cause of action herein is not the violation of any rights of ownership in the body of the deceased. Plaintiff does not sue for the possession of the body, nor for the right to bury the body in any particular manner or place as against the wishes of other next of kin. The plaintiff sues for the injury he has suffered because of the defendant's unlawful *interference with his right of solace and comfort in burying the remains of his deceased father.* The right of near relatives to the solace and comfort of burying the remains of the deceased, and their right to sue to prevent interference with the body or the burial rites, or to recover damages for mental anguish or expense resulting from such interference, has been repeatedly recognized by the American courts. Darcy v. Presbyterian Hospital, 202 N. Y. 259, 95 N. E. 695, Ann. Cas. 1912D, 1238; Foley v. Phelps, 1 App. Div. 551, 37 N. Y. Supp. 471; Cohen v. Congregation, 85 App. Div. 65, 82 N. Y. Supp. 918; Jackson v. Savage, 109 App. Div. 556, 96 N. Y. Supp. 366; Hassard v. Lehane, 143 App. Div. 424, 128 N. Y. Supp. 161; Snyder v. Snyder, 60 How. Prac. 368, 371; Danahy v. Kellogg, 70 Misc. Rep. 25, 126 N. Y. Supp. 444; In re Donn, 14 N. Y. Supp. 189; Matter of Widening Beekman St., 4 Bradf. Sur. 503; Louisville & Nashville R. R. v. Wilson, 123 Ga. 62, 67, 51 S. E. 24, 3 Ann. Cas. 128; Wright v. Hollywood Cemetery Corp'n, 112 Ga. 884, 890, 38 S. E. 94, 52 L. R. A.

621; Beam v. C., C., C. & St. L. R. R., 97 Ill. App. 24, 27, 28; Palenzke v. Bruning, 98 Ill. App. 644, 650, 651; Renihan v. Wright, 125 Ind. 536, 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. Rep. 249; Anderson v. Acheson, 132 Iowa, 744, 749, 110 N. W. 335, 9 L. R. A. (N. S.) 217; Seaton v. Commonwealth, 149 Ky. 498, 501, 49 S. W. 871, 42 L. R. A. (N. S.) 211; Kanavan's Case, 1 Me. (1 Greenl.) 226; Larson v. Chase, 47 Minn. 307, 308, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Lindh v. Great Northern Ry., 99 Minn. 408, 109 N. W. 823, 7 L. R. A. (N. S.) 1018; Litteral v. Litteral, 131 Mo. App. 306, 111 S. W. 872, 873, 874; De Festetics v. De Festetics, 79 N. J. Eq. 488, 81 Atl. 741, 742, 743.

In the leading decision on this subject (Matter of Widening Beekman Street, supra) the court said:

"The real question is not of the disposable, marketable value of a corpse or its remains as an article of traffic, but it is of the sacred and inherent right to its custody in order decently to bury it and to secure its undisturbed repose. The dogma of the English ecclesiastical law that a child has no such claim, no such exclusive power, no peculiar interest in the dead body of its parent, is so utterly inconsistent with every enlightened perception of personal right, so inexpressibly repulsive to every proper moral sense, that its adoption would be an eternal disgrace to American jurisprudence. The establishment of a right so sacred and precious ought not to need any judicial precedent. Our courts of justice should place it at once where it should fundamentally rest forever, on the deepest and most unerring instincts of human nature, and hold it to be a self-evident right of humanity, entitled to legal protection by every consideration of feeling, decency, and Christian duty."

The court further held that this right to solace and comfort in burying the remains of a deceased relative "includes the right to preserve them by separate burial, to select the place of sepulture and to change it at pleasure." 4 Bradf. Sur. 532.

It is not disputed that a cause of action exists in the case of mutilation. What gives that conceded cause of action? Not the injury or indignity to the corpse, but the interference with some right of the plaintiff. This right is not founded upon the duty to bury the remains. If it were, obviously, there would be no cause of action in the case of mutilation by dissection, for still the remains require burial, and there is that duty to be performed, and which may and must be performed, regardless of the indignity to which the corpse has been subjected. It is true that in Buchanan v. Buchanan, 28 Misc. Rep. 261, 59 N. Y. Supp. 810, is the dictum of a very learned judge that a person has no legal right to the possession of a corpse because of relationship in the abstract, and that it is only where an arrested right, founded upon the duty of burial, has been violated before burial, that a person aggrieved may possibly maintain an action at law for the violation. But that was an action to replevy a corpse, instituted by the widow of the deceased against his brother, who had given the remains a decent and fitting interment. It was simply decided that a widow, who had not lived with her husband for nine years prior to the time of his death, and was in receipt of alimony from him pending the determination of an action for separation brought by her, could not maintain an action in replevin to recover possession of her husband's body against his brother, who had given the body decent burial; the

court holding that the question was for the consideration of equity. In reaching this decision the court recognized the right in a relative to the solace and comfort of the possession of the remains of a deceased for the purposes of burial, but, as it seems to me, did not correctly state the theory upon which such a recovery might be had by basing the right to possession for the purposes of burial upon *a duty to bury*, saying (28 Misc. Rep. 262, 59 N. Y. Supp. 810):

"How may she maintain an action * * * founded upon a continuing right of possession where the duty to bury has been undertaken and performed by somebody else?"

If this were the law, any unauthorized person, by giving the remains any kind of decent burial, might deprive all the relatives of the deceased of the solace and comfort of burying their deceased relative according to the rites to which he and they were devoted. Such a proposition is too shocking to be accepted. As pointed out above, the duty to bury cannot be the basis of the right of action, for in a case of mutilation the duty of burial is not necessarily interfered with, and still there is a cause of action. That cause of action is based upon the right of the relatives to the solace and comfort of burying their deceased relative. If this right is interfered with by mutilation, as has been repeatedly held, it is clear that it is interfered with, and much more seriously, when the body is wholly withheld from them.

[2] The learned counsel for the defendant, in arguing that "the complaint is based upon a presumed duty on the part of the master of the steamship to bring the body of the deceased to port," and in attempting to defend the master's conduct on the ground that "a proper burial at sea, in accordance with the usual custom in such matters," was had, entirely misses the plaintiff's theory, and the only sound theory upon which a cause of action exists. The duty of the defendant, which the plaintiff asserts herein was violated, is to refrain from interfering with the disposition of the remains in such fashion as to deprive the plaintiff of the solace and comfort of giving them a burial in the fashion and manner which the plaintiff and family of the deceased may determine.

It is true that the demurrer does not admit the conclusion that the defendant's acts were negligent, wrongful, or willful; but it does admit the facts pleaded, and these facts, which include the allegations that the body was in *a perfect state of preservation and was proof against decomposition when it was cast into the sea only a few hours from the docking point,* certainly sustain the inference that the act complained of was, prima facie, needless, and therefore negligent, wrongful, and willful. Admitting all of the facts pleaded in the complaint, the case discloses wanton violation of well-recognized, established, and sacred rights, and a reckless disregard of the tenderest human sentiments, bound to inflict mental anguish. That substantial damages may be recovered for the deprivation of the solace and comfort of burying the remains of a deceased relative, and for any interference by third parties with the remains which may lacerate the plaintiff's feelings and deprive the plaintiff of the solace and comfort, is undoubted. Foley v. Phelps, 1 App. Div. 551, 37 N. Y. Supp. 471;

Loy v. Reid, 11 Ala. App. 231, 65 South. 855; Wright v. Hollywood Cemetery, 112 Ga. 884, 890, 38 S. E. 94, 52 L. R. A. 621; L. & N. R. R. v. Wilson, 123 Ga. 62, 63, 64, 51 S. E. 24, 3 Ann. Cas. 128; Medical College of Georgia v. Rushing, 1 Ga. App. 468, 57 S. E. 1083; Beam v. Cleveland, C., C. & St. L. Ry., 97 Ill. App. 24, 27, 28; Renihan v. Wright, 125 Ind. 536, 540–545, 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. Rep. 249; Anderson v. Acheson, 132 Iowa, 744, 755, 110 N. W. 235, 9 L. R. A. (N. S.) 217; Louisville, etc., Ry. v. Hull, 68 S. W. 433, 435, 57 L. R. A. 771; Meyers v. Clarke, 122 Ky. 866, 90 S. W. 1049, 93 S. W. 43, 5 L. R. A. (N. S.) 727; Burney v. Children's Hospital, 169 Mass. 57, 60, 47 N. E. 401, 38 L. R. A. 413, 61 Am. St. Rep. 273; Larson v. Chase, 47 Minn. 308, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Lindh v. Great Northern Ry., 99 Minn. 408, 109 N. W. 823, 7 L. R. A. (N. S.) 1018; Wilson v. St. Louis & S. F. Ry., 160 Mo. App. 649, 142 S. W. 775; Kyles v. Southern Ry., 147 N. C. 394, 399, 400, 61 S. E. 278; Farley v. Carson, 8 Ohio Dec. 119, 120; Hale v. Bonner, 82 Tex. 33, 17 S. W. 605, 14 L. R. A. 336, 27 Am. St. Rep. 850; Wells Fargo & Co. v. Fuller, 13 Tex. Civ. App. 610, 35 S. W. 824; St. Louis S. W. Ry. v. French, 23 Tex. Civ. App. 511, 57 S. W. 56; Gatzow v. Buening, 106 Wis. 1, 11, 12, 81 N. W. 1003, 49 L. R. A. 475, 80 Am. St. Rep. 1; Koerber v. Patek, 123 Wis. 453, 456, 457, 460, 462, 463, 102 N. W. 40, 68 L. R. A. 956; Anonymous Case, 6 Am. L. Review, 182; Philips v. Montreal General Hospital, 33 Quebec L. R., 483, 490.

[3] Defendant's point that "the death and burial of Clement B. Finley took place on the high seas" is not available on this demurrer. The court cannot take judicial notice that when the body was cast overboard the vessel was on the high seas, simply because Nantucket Shoals is in the high seas. The allegation is that the body was cast "into the sea in *or near* the tidal waters off Nantucket Shoals." Whether this was inside or outside the three-mile limit or within the territory of the jurisdiction of the United States does not appear. Neither does it appear that there was a "proper burial at sea in accordance with the usual custom in such matters." Casting the body overboard does not necessarily imply "a proper burial at sea in accordance with the usual custom in such matters." These points, together with the contention made as to the authority of the master of a vessel, are all matters to be pleaded in an answer and are not available upon this demurrer.

[4] It is also urged that there is a defect of parties plaintiff, but the point is not well taken. By the law of the state of New York the right to the possession of a body for the purpose of burial belongs to the surviving husband or wife, or next of kin, in the absence of any testamentary disposition. Darcy v. Presbyterian Hospital, 202 N. Y. 262, 95 N. E. 695, Ann. Cas. 1912D, 1238. But this is not an action for the possession of the body, but is to recover damages for mental anguish and expense resulting from an interference with plaintiff's right of solace and comfort in the burial of his father's body, and it is established that an action for the violation of such rights does not require joining all the next of kin as parties plaintiff. People v. Trustees of St. Patrick's Cathedral, 58 How. Prac. 55, 64–65; Wright v.

Hollywood Cemetery Corp'n, 112 Ga. 884, 38 S. E. 94, 52 L. R. A. 621. In cases where the sole question involved is the right to the custody of the body of the deceased, it is frequently stated that the right to the body for the purposes of burial is in the next of kin in the order of relationship; but it is established that this is no hard and fast rule, the degree of kinship to the deceased of claimants to his body being merely "guides to be considered and applied as the case may require." Pettigrew v. Pettigrew, 207 Pa. 313, 319, 56 Atl. 878, 64 L. R. A. 179, 99 Am. St. Rep. 795; De Festetics v. De Festetics, 79 N. J. Eq. 488, 81 Atl. 741, 742.

Under the doctrine of the cases above cited, the fact that the plaintiff herein was the son of the deceased, who left no wife or any nearer relative living, and that the plaintiff resided in the same community with the deceased, and that the plaintiff's address for purposes of notification was among the papers found upon the deceased at the time of his death, and that the plaintiff was in fact notified by the defendant of the death of the deceased, and thereupon, *at the request of all the next of kin,* made all preparations to take charge of the body, and that so far as appears no other relative was either notified of the death of the deceased, or made any preparations to take care of the body, confirms the view that the plaintiff has properly brought suit herein alone. Cases which adjudicate various and conflicting claims of surviving relatives to bury the deceased have no relevancy, for no such conflict of claims appears here or is involved. The right of solace and comfort in burying the remains of his father did not vest in the plaintiff in his representative capacity, as one of the next of kin of the deceased. It vested in the plaintiff because the deceased was the plaintiff's father, and because the defendant's unlawful interference with his father's remains caused the plaintiff mental anguish of the most poignant kind. The injury was individual and personal in the utmost degree. His mental anguish was not suffered jointly with the other next of kin. If the other next of kin have been injured, their mental anguish has been individual and personal to them, and for this the other next of kin may sue individually. The fact that they are not parties plaintiff cannot preclude the plaintiff from recovery upon the cause of action pleaded.

Motion for judgment granted, with $10 costs, with leave to the defendant to withdraw the demurrer and answer within 10 days upon payment of said costs.